# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CR-14-347-D |
| | ) | |
| RICHARD M. ARNOLD SR.; | ) | |
| RICHARD M. ARNOLD, II; | ) | |
| ROBERT W. ARNOLD; and | ) | |
| ROBYN R. ARNOLD, | ) | |
| | ) | |
| Defendants. | ) | |

## O R D E R

Defendant Richard M. Arnold Sr. plead guilty to the offenses of wire fraud and conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349, respectively. Defendant Richard M. Arnold II pled guilty to one count of conspiracy to commit wire fraud; Defendant Robert W. Arnold was found guilty of conspiracy to commit wire fraud and wire fraud; and Defendant Robyn R. Arnold pled guilty to one count of conspiracy to commit wire fraud. A hearing was held on February 18, 2016 to determine the proper amount of restitution, if any, to be paid by Defendants.[1]

---

[1] As reflected herein, the Court has not accepted in toto the Government's position regarding the categories of victims due restitution. Thus, on the current record, the losses of all victims are not presently ascertainable without supplemental information. *See* 18 U.S.C. § 3664(d)(5).

## BACKGROUND

For purposes of this Order, the Court finds it unnecessary to recount in full detail the wire fraud scheme involved in the counts charged, other than to provide a general description of the scheme and some relevant facts as to the Court's finding of victim status, actual loss, and the amount of restitution to be awarded. In short, Defendants represented to their friends and acquaintances that they could help them buy new cars through a charitable trust designed to help working people purchase new vehicles. Defendants claimed an entity known as the CECU Trust ("CECU") financed the program. This assistance, however, was contingent upon the individuals obtaining financing and giving Defendants the rebate (or "cash back") amount they received upon consummating the vehicle purchase.

For those individuals who wished to participate, Defendants arranged for them to purchase vehicles with large rebates or "cash back" financing and then required that they give the rebates to Defendants. Defendants represented they would invest the rebates into CECU, which would make the individuals' monthly car payments for the length of the loans. The car loans were always in the individual buyer's name. Subsequent to the vehicle's purchase, either defendant Richard Arnold Sr., Richard Arnold II or Robert W. Arnold would meet the buyers and receive the rebate/"cash back" checks. Defendants then caused these proceeds to be deposited into CECU

bank accounts controlled by Defendant Robyn R. Arnold. Although some loan payments on behalf of the buyers were made by CECU, overall Defendants failed to make any meaningful payments with the proceeds and instead used them for their personal expenses.

When Defendants failed to make the vehicle payments as promised, various lenders notified the buyers of potential defaults. Some of the buyers decided to keep their vehicles; others had their vehicles repossessed by the lenders, which were then sold at a deficiency. In all, an investigation by the Federal Bureau of Investigation and the Office of the Oklahoma Attorney General discovered thirty (30) victims of Defendants' scheme.

## DISCUSSION

A district court may order restitution only as authorized by federal statute. *United States v. Ferdman*, 779 F.3d 1129, 1131 (10th Cir. 2015). Under the Mandatory Victims Restitution Act ("MVRA"), restitution shall be ordered following a conviction for any offense committed by fraud or deceit. *See* 18 U.S.C. § 3663A(c)(1)(A)(ii). Accordingly, the Court finds payment of restitution is appropriate under the facts of this case, to be paid by Defendants jointly and severally. "The primary goal of restitution is remedial or compensatory ... but it also serves punitive purposes[.]" *Paroline v. United States*, __ U.S. __, 134 S.Ct. 1710, 1726, 188 L.Ed.2d

714 (2014) (citations omitted). Its principal aim, thus, is to ensure that victims of a crime, to the extent possible, are made whole for their losses. *Ferdman*, 779 F.3d at 1132 (citing *United States v. James*, 564 F.3d 1237, 1246 (10th Cir. 2009)). "This means restoring victims to the position they occupied before the crime." *Id*. (citing *Hughley v. United States*, 495 U.S. 411, 416 (1990)).

Restitution must neither unjustly enrich victims nor provide them a windfall. *Id*. (citing *James*, 564 F.3d at 1246). Thus, "an order of restitution imposed pursuant to the MVRA must be based on 'the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant.' ... '[A] district court may not order restitution in an amount that exceeds the actual loss caused by the defendant's conduct, which would amount to an illegal sentence constituting plain error.'" *Id*. (quoting *James*, 564 F.3d at 1243; citing *United States v. Serawop*, 505 F.3d 1112, 1124 (10th Cir. 2007)).

Any dispute as to the proper amount of restitution shall be resolved by a preponderance of the evidence, with the Government bearing the burden of demonstrating the amount of loss sustained by the victim as a result of the offense. *Id*. (citing 18 U.S.C. § 3664(e)). The Court may resolve uncertainties surrounding restitution with a view towards achieving fairness to the victim, so long as it makes a reasonable determination of appropriate restitution "*rooted in a calculation of*

*actual loss*." *Id*. (quoting *United States v. Gallant*, 537 F.3d 1202, 1252 (10th Cir. 2008) (emphasis in original)).[2]

Under the MVRA, a "victim" is broadly defined as:

> [A] person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663A(a)(1); *see also United States v. Hudson*, 556 F. App'x 688, 694 (10th Cir. 2014) (unpublished). Using this definition, the Court finds three classes of victims for purposes of restitution in the present case.

The first category consists of those individuals who purchased vehicles, gave Defendants their rebate/"cash back" checks or other valuable consideration, but kept their vehicles after the scheme was discovered. The calculation of restitution for these individuals shall be the amount of the rebate/"cash back" paid to Defendants, minus any payments made by CECU toward the vehicle loan.

The second category is made up of individuals who purchased vehicles, tendered Defendants their rebate/"cash back" checks or other valuable consideration,

---

[2] The Sentencing Guidelines define "actual loss" as "the reasonably foreseeable pecuniary harm that resulted from the offense." *United States v. Washington*, 634 F.3d 1180, 1184 (10th Cir. 2011) (citing U.S.S.G. § 2B1.1 cmt. n.3(A)(i)).

5

and ultimately had their vehicles repossessed. Restitution for these individuals shall, likewise, be the amount of the rebate/"cash back" paid to Defendants, minus any payments made by CECU toward the vehicle loan.

The final category of victims includes the lenders who repossessed vehicles and sold them at a deficiency. *Compare United States v. Washington*, 634 F.3d 1180, 1184 (10th Cir. 2011).[3] The calculation of restitution for these entities shall be the amount of the deficiency after repossession and sale of the vehicle. *Compare United States v. James*, 564 F.3d 1237, 1245-46 (10th Cir. 2009) (recognizing use of foreclosure sale price as a reasonable method of determining amount of restitution under § 3663A); *Washington*, 634 F.3d at 1184 ("Where a lender has foreclosed and sold the collateral, the net loss should be determined by subtracting the sales price from the outstanding balance on the loan.") (citing *United States v. James*, 592 F.3d

---

[3]In *Washington*, the defendant, a mortgage broker, assisted a friend in the purchase of three houses. The loan applications overstated the friend's income and included other misstatements. Upon nonpayment of the loans, foreclosure proceedings ensued. As part of those proceedings, each property was auctioned at a sheriff's sale and acquired by the lender or an assignee and then resold on the open market. The district court concluded that downstream purchasers of the mortgages were "victims" of defendant's mortgage fraud and their losses were foreseeable to defendant, a veteran of the real estate industry. *See Washington*, 634 F.3d at 1181, 1184.

1109, 1114 (10th Cir. 2010)).[4]

## CONCLUSION

The Court finds an award of restitution is clearly appropriate under the facts of this case and such restitution shall be paid by Defendants jointly and severally. The Government is directed to, within **thirty (30) days** of this Order, submit a supplemental brief addressing the aforementioned categories of victims and amounts of restitution due each. Defendants may file responses within **fourteen (14) days** of the Government's supplemental brief. After the receipt of said briefing, the Court will schedule a hearing to finally determine the amount of restitution within the time period set forth in 18 U.S.C. § 3664(d)(5). *See United States v. Vandeberg*, 201 F.3d 805, 813 (6th Cir. 2000) (noting § 3664(d)(5) must be read in conjunction with other provisions of § 3664, which "delineate[] a panoply of procedures pertinent to the issuance and enforcement of restitution; the statute grants a district court discretion to choose the procedures that will best aid the court in assessing the amount of loss").[5]

---

[4]In making this determination, the Court is not persuaded by Defendants' argument that so-called "captive lenders" do not qualify as "victims" for purposes of restitution.

[5]In light of the determinations of the Court contained herein, the Court encourages counsel to confer in an attempt to reach an agreement as to amounts of restitution due victims in the categories set forth.

7

**IT IS SO ORDERED** this 22nd day of March, 2016.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE